# THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| vs. : | Case No.   8:15-cr-00334-PJM |
| CHRISTOPHER CAMUT : | |
| Defendant : | |

## REPLY IN SUPPORT OF EMERGENCY MOTION
## FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

The Government has opposed compassionate release in this case, arguing the Court lacks the authority to define as "extraordinary and compelling reasons" anything not specifically enumerated in BOP Program Statement 5050.50 or Application Notes 1(A)-(C) of Guideline Section 1B1.13.  However, as numerous judges across the country, including Judges Bennett, Blake, Bredar, Chuang, Grimm, and Hollander of this District have recognized since the passage of the First Step Act, "although the [Sentencing] Commission's commentary is instructive, the Court retains independent discretion to determine whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."  *See, e.g.*, *United States v. Wise*, Crim. No. ELH-18-0072, 2020 WL 2614816, at *6 (D. Md. May 22, 2020).  Similarly, the Court has rejected the Government's argument that the risk of contracting COVID-19 is only "hypothetical" and, therefore, not a basis for relief.  This Court has the authority to reduce Mr. Camut's sentence and should exercise its discretion to do so after weighing the 18 U.S.C. § 3553(a) factors.

## ARGUMENT

### A. The First Step Act Gave Courts Authority to Determine What Constitutes Extraordinary and Compelling Reasons for Relief.

Contrary to the government's argument, courts are no longer constrained to grant compassionate release only in those circumstances enumerated in Application Note 1(A)-(C) of Guideline Section 1B1.13 or BOP Program Statement 5050.50. This Court has joined the "growing consensus among judges in this district and elsewhere . . . that § 1B1.13 is not a straightjacket." *United States v. Wise*, Crim. No. ELH-18-072, 2020 WL 2614816, at *5 (D. Md. May 22, 2020). As the Court reasoned in *Wise*, "cabining the application of § 3582 to the scenarios set forth in the commentary accompanying U.S.S.G. § 1B1.13 is contrary to the [First Step Act], which Congress enacted to remove the BOP as the gatekeeper of compassionate release." *Id.* Accordingly, "although the Commission's commentary is instructive, the Court retains independent discretion to determine whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Id.* at *6; *see also, e.g.*, *United States v. Williams*, Crim. No. PWG-19-0134, 2020 WL 3073320, at *2-3 (D. Md. June 10, 2020); *United States v. Gray*, Crim. No. RDB-16-0364, 2020 WL 2932838, at *2 (D. Md. June 3, 2020); *United States v. Gardner*, Crim. No. JKB-09-0619, ECF No. 72 at 3 (D. Md. May 27, 2020); *United States v. Gutman*, Crim. No. RDB-19-069, 2020 WL 2467435, at *2 (D. Md. May 13, 2020); *United States v. Scott*, Crim. No. CCB-94-0202, 2020 WL 2467425 (D. Md. May 13, 2020), *appealed by the gov't*; *United States v. Bryant*, Crim. No. CCB-95-0202, 2020 WL 2085471 (D. Md. Apr. 30, 2020); *United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020); *United States v. Decator*, Crim. No. CCB-95-0202, 2020 WL 167219, at *2 (D. Md. Apr. 6, 2020), *appealed by the gov't*.

2

The government looks only to Application Notes 1(A)-(C) and ignores Application Note 1(D), which states extraordinary and compelling reasons exist when, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." As the Court has explained, "U.S.S.G. § 1B1.13 is outdated in light of the [First Step Act]" because "[i]t presupposes that § 3582 review is available only upon motion by the BOP, which is no longer correct." *Wise*, 2020 WL 2614816, at *5; *see also Gardner*, Crim. No. JKB-09-0619, ECF No. 72 at 3; *Gutman*, 2020 WL 2467435, at *2; *Mel*, 2020 WL 2041674, at *3.

Thus, it is now the Court, rather than exclusively the BOP, that can define whether extraordinary and compelling reasons "other than, or in combination with, the reasons described in subdivisions (A) through (C)" exist. *Decator*, 2020 WL 167219, at *2 (citing *United States v. Redd*, No. 1:97-CR-0006-AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020), and *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020)); *see also United States v. Barringer*, Crim. No. PJM-13-0129, ECF No. 91 at 6 (D. Md. May 20, 2020) ("The Court is in accord with the judges of this district and many courts nationwide that, in light of the passage of the First Step Act, U.S.S.G. § 1B1.13 and BOP criteria are 'helpful guidance,' but that a court has independent discretion to determine whether there are 'extraordinary and compelling reasons.'").

The First Step Act fundamentally changed the role of the Court vis à vis the Bureau of Prisons in determining whether extraordinary and compelling reasons exist in a particular case. Accordingly, this Court has the clear authority under Application Note 1(D) of Guidelines Section 1B1.13 to find that the pandemic presents "extraordinary and compelling reason" to

release Mr. Camut because of his hypertension and recurrent thyroid cancer which render him particularly vulnerable to COVID-19.

Mr. Camut must receive proper medical evaluation to determine whether he is experiencing a metastization of his thyroid cancer. His condition may well qualify as a "terminal illness," as that term is defined in Application Note 1 to U.S.S.G. § 1B1.13. He has no ability to assess the extent or his illness or associated limitations, because the Bureau of Prisons has not yet provided him with the PET scan and endocrinologist consultation required to fully assess his condition. Upon information and belief, Mr. Camut's treating physician within the BOP, Dr. Resto, recently informed Mr. Camut that his recent bloodwork (drawn after the initial filing of Defendant's Emergency Motion for Compassionate Release) showed an increase in his titers consistent with the pattern of his monthly blood work suggesting a recurrence of thyroid cancer. Specifically, the recent bloodwork showed an increase in:

- TSH (from 7 to 8)
- thyroid antibody levels (by 15%)
- triglycerides
- resting blood pressure (150/90 when medicated)

The Government has acknowledged that Mr. Camut's treating physician placed an urgent consultation request on April 28, 2020, directing that Mr. Camut be seen by an endocrinologist. *See* Government's Opposition at p.11, n.8. More than two months have elapsed since Mr. Camut's physician placed that "urgent" request but Mr. Camut has not yet been provided with a PET scan nor a consult with an endocrinologist. While the Government represents that the BOP intends to provide the PET scan "within the next two weeks," then schedule Mr. Camut for an appointment with an endocrinologist, *see id.*, neither Mr. Camut, nor the Court, need to rely on the BOP's ability to diagnose and treat Mr. Camut with haste during the COVID-19 pandemic. The fact that Mr. Camut has not been able to receive the diagnostic assessment and treatment

that all parties agree that he requires, is reason enough to find extraordinary and compelling reasons for compassionate release. *See e.g. United States v. Mel*, 2020 WL 2041674, at *2 (J. Chuang) (The COVID-19 pandemic presented extraordinary and compelling reasons that warranted the modest sentencing reduction requested when Ms. Mel had submitted documents establishing that she had a thyroid mass that doctors estimated had a 25% to 40% percent chance of malignancy and among other reasons, the fact that as a result of the outbreak, she had effectively been prevented from receiving necessary medical care for a potentially life threatening condition, established 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3. The Government's assertion that Mr. Camut must have been diagnosed with recurrent thyroid cancer and to have received treatment rendering him immunocompromised before his circumstances qualify as extraordinary and compelling is not logical, and is much more than the law requires and is a higher standard than other jurists considering similar cases have recognized.

The Government also argues that Mr. Camut's hypertension does not establish an extraordinary and compelling circumstance because under the Center for Disease Control's ever-evolving guidelines, Mr. Camut "may be at risk" for severe illness from COVID, rather than is certainly at risk, *See Government Opp.* at 10. The CDC still clearly classifies Mr. Camut's hyper tension as placing him at higher-risk than an individual without such co-morbidities. In addition to his history of thyroid cancer and current hypertension, Mr. Camut also suffers from renal failure (the highest risk category according to the CDC) and his present Creatinine levels are extremely elevated. Mr. Camut's recent bloodwork also suggests that he is Type 2 diabetic (also categorized in the highest risk category), however, he has yet to receive any treatment for the condition from his BOP healthcare provider. According to the CDC, "The more underlying

medical conditions someone has, the greater their risk is for severe illness from COVID-19." *People With Mutiple Underlying Conditions,* CDC Coronavirus Disease 2019, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medicalconditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (retrieved* July 9, 2020) The sum of Mr. Camut's conditions and medical history render his case extraordinary and compelling.

Ultimately, however, the Court need not resolve the issue of whether the Court retains independent authority to determine the grounds for compassionate release because Mr. Camut is eligible for relief under Application Note 1(A), as the Department of Justice's ("DOJ") own policy makes clear. The DOJ has conceded that "if an inmate presents one of the factors identified by the [CDC] that poses an increased risk of severe illness from COVID-19, they should be considered to be suffering from a 'serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover'—even if that condition in ordinary times would not meet the terms of the U.S.S.G. policy statement." *United States v. Gardner*, No. JKB-09-0619, ECF No. 70, Gov't Resp. at 4 (describing "[c]urrent [DOJ] policy" (citing U.S.S.G. § 1B1.13, app. n. 1(A)(ii)(I)); *see also, e.g.*, *United States v. Fischer*, No. ELH-14-0595, ECF No. 98, Gov't Resp. at 11 n.2 (same). Mr. Camut meets those criteria by virtue of his hypertension, thyroid cancer, renal failure, and possible diabetes which the CDC has said place him at an increased risk due to COVID-19. In sum, Mr. Camut's medical vulnerability to COVID-19 establishes an "extraordinary and compelling" reason for relief under either Application Note 1(A) or 1(D) of Guideline Section 1B1.13.

B. **The Risk to Mr. Camut Is Not Hypothetical Despite the BOP's Efforts to Contain the Virus.**

The Government also argues that the danger COVID-19 poses to Mr. Camut is "hypothetical" and does not constitute extraordinary and compelling grounds for relief because the BOP is taking several measures to prevent the spread of the infection. This Court has already rejected the government's argument. Judge Hollander, recognizing that the BOP has implemented measures to protect inmates from COVID-19, stated that "it would be pollyannaish to believe that Allenwood FCI [which at that time reported no positive cases among inmates] will escape this pandemic unscathed." *Wise*, No. ELH-18-072, ECF No. 193 at 12. Judge Chasanow has likewise concluded that the "happy fact that there have been no positive tests yet" at the defendant's facility "does not prevent the finding of extraordinary and compelling reasons for release." *United States v. Martin*, No. DKC-04-0235, ECF No. 2006 at 6-7 (D. Md. June 24, 2020).

As Judge Chuang has explained, "even with the BOP mitigation measures outlined by the Government, as of April 26, 2020, COVID-19 is present among inmates or correctional staff at 62 different Bureau of Prisons facilities, consisting of 1,118 cases and resulting in 27 deaths." *Mel*, 2020 WL 2041674, at *2 (citation omitted). This is no surprise. "In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high." *Id.* (citation omitted). Indeed, as Judge Bennett noted, even Attorney General William Barr has "acknowledged," "the COVID-19 Pandemic poses unique risks to elderly and vulnerable inmates." *United States v. Winston*, Crim. No. RDB-13-639, ECF No. 294 at 6 (D. Md. Apr. 28, 2020).

7

That the BOP's website does not currently report any COVID-19 cases at FCI Florence institution does not mean Mr. Camut is out of harm's way. Senators Richard Durbin and Chuck Grassley have publicly questioned whether the BOP's numbers are accurate and whether the BOP is downplaying the threat of COVID-19 behind bars. *See* Letter from Senators Durbin & Grassley to Inspector General Michael Horowitz (Apr. 21, 2020), https://www.durbin.senate.gov/imo/media/doc/DOJ%20IG%20COVID-19%20BOP%20letter%20final%20signed.pdf.

> As one judge recently noted:
>
> Zero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases. The Bureau of Prisons recently discovered this when it found that 70 percent of the inmates it tested were positive for the disease. *See* Sadie Gurman, *More Than 70% of Inmates Tested in Federal Prisons Have Coronavirus*, The Wall Street Journal (Apr. 30, 2020), https://www.wsj.com/articles/more-than-70-of-inmates-tested-in-federal-prisons-have-coronavirus-11588252023 (noting that "prison officials expect [this number] to rise as they expand testing with a focus on the hardest-hit facilities"). The Southeast Regional Vice President of the Council of Prison Locals referred to "the inside of a [ prison] institution" as a "little petri dish ... a life and death situation [that prison officials then take] home to our families." *Id.* This disease spreads asymptomatically, which means the Court and the prison system can take no comfort in a lack of confirmed cases, and all parties should be deeply concerned by the lack of universal testing of inmates and staff. *See How COVID-19 Spreads*, CDC (Apr. 3, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covidspreads.html?CDC_AA_refVal=https% 3A% 2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ftransmission.html.

*United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020).

Testing at BOP facilities has varied widely, with some facilities not even testing for the virus. *See* Nicholas Chrastil, *Louisiana Federal Prison No Longer Testing Symptomatic Inmates for Coronavirus Due To 'Sustained Transmission'*, The Lens (Mar. 31, 2020), https://thelensnola.org/2020/03/31/louisiana-federal-prison-no-longer-testing-symptomatic-inmates-for-coronavirus-due-to-sustained-transmission/; *see also* Cary Aspinwall & Joseph Neff,

8

*These Prisons Are Doing Mass testing for COVID-19—And Finding Mass Infections*, The Marshall Project (Apr. 24, 2020), https://www.themarshallproject.org/2020/04/24/these-prisons-are-doing-mass-testing-for-covid-19-and-finding-mass-infections ("Federal officials have largely given up testing at a half dozen prisons . . . .").

At FCI Florence, where Mr. Camut is housed, only 62 tests for coronavirus have been administered to the 1,187 inmates at the facility. *COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (retrieved* July 9, 2020). The BOP appears to have tested approximately 19% of its inmate population as of July 9, 2020, *see id.* (showing 26,315 tests conducted) and *https://www.bop.gov/about/statistics/statistics_inmate_shu.jsp* (showing a current inmate population of 130, 245).  Of those tested, the BOP has returned a 28.8% positivity rate, *see https://www.bop.gov/coronavirus/* rivaling the rates of the hardest-hit states. Mr. Camut's facility lags far behind other BOP facilities in testing, having only tested 62 or 5.2% of its 1,187 inmates. The fact that FCI Florence has not yet reported a positive test result (out of the mere 62 inmates tested) is not conclusive evidence that the virus is not present in the facility.

Furthermore, even if there are truly no COVID-19 cases at FCI Florence at this point in time, it makes no sense to wait for an outbreak or more widespread testing before releasing Mr. Camut, who is at great risk, has a confirmed release plan, whose release would pose no danger to the community and whose release to Reentry and via that release, to Home Monitoring, is to take place on or about September 16, in any event. Because of how quickly COVID-19 spreads in a prison environment, facilities with zero cases can become deadly hotspots within a matter of days or weeks.  FCI Terminal Island is a frightening example.  As of April 13, 2020, that prison reported seven positive cases among its incarcerated population and two positive staff cases.  By May 4, 2020, those numbers had exploded: 623 prisoners tested positive and five died.  Five

more inmates have died since then. Similar outbreaks have occurred at federal prisons in Elkton, Oakdale, and Fort Worth.

As of July 9, 2020, there were 7,596 BOP inmates and 836 staff members who have tested positive for COVID-19. At least 89 inmates have died. Despite its efforts to stop the spread of the contagion, it is spreading and at an exponential rate. And that only accounts for people who have been tested. As one jurist observed,

> [b]ecause the BOP has tested so few inmates …these statistics almost certainly underestimate the true number of infections and the number of affected BOP facilities. According to Leonard Rubenstein, a professor at Johns Hopkins Bloomberg School of Public Health, "Unless you do universal testing in all environments, the risk of spread is enormous. If you are waiting for symptoms to emerge before you do the testing, you are getting a false picture of what is going on…..It's too late."

*United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *5 (D. Mass. May 4, 2020) (footnotes omitted); *see also United States v. Locke*, No. CR18-0132, 2020 WL 3101016, at *1 (W.D. Wash. June 11, 2020) (granting compassionate release despite no confirmed cases at the defendant's BOP facility); *United States v. Regas*, No. 3:91-cr-00057, ECF No. 1829 (D. Nev. June 3, 2020) (same); *United States v. Loyd*, No. 15-20394, 2020 WL 2572275 (E.D. Mich. May 21, 2020) (same); *United States v. Feucht*, No. 11-60025, ECF No. 53 at 6 (S.D. Fla. May 28, 2020) (same); *United States v. Washington*, No. 07-0258, ECF No. 529 at 1 (E.D.P.A. May 14, 2020) (same); *United States v. Asaro*, No. 17-cr-127, 2020 WL 1899221, at *6 (E.D.N.Y Ap. 17, 2020) (same); *United States v. Atkinson*, No. 2:19-CR-55, 2020 WL 1904585, at *2 (D. Nev. Apr. 17, 2020) (same); *United States v. Ben-Yhwh*, __ F. Supp. 3d __, 2020 WL 1874125, at *1-2 (D. Haw. Apr. 13, 2020) (same); *United States v. Burrill*, __ F. Supp. 3d __, 2020 WL 1846788, at *1 (N.D. Cal. Apr. 10, 2020) (same).

Ultimately, whether the Bureau of Prisons is making a good-faith effort to prevent further spread of the illness is not the issue before the Court. This is not a civil suit alleging civil rights violations. Rather, at issue is whether the pandemic combined with Mr. Camut's medical conditions constitute extraordinary and compelling reasons for relief. As a factual matter, COVID-19 is spreading within the Bureau of Prisons and Mr. Camut has serious medical issues that the CDC states place Mr. Camut at risk of severe illness. As numerous other courts have done, including judges in this District, this Court should find Mr. Camut's situation constitutes extraordinary and compelling reasons for relief.

### C. A Time-Served Sentence Satisfies the Purposes of Sentencing Under 18 U.S.C. § 3553(a).

The Government asserts that Mr. Camut's thyroid cancer recurrence is a "newly claimed medical problem" indicating that Mr. Camut is an "opportunist" who lacks remorse. *See Government Opp.* at 15. Of course, Mr. Camut had no control over his recent lab results and the recommendations of his treating physician that he be evaluated by an endocrinologist. Indeed, he would prefer not to battle thyroid cancer again. Unfortunately, he still urgently requires a diagnostic PET scan and possible cancer treatment, neither of which can wait until the COVID pandemic passes. Neither the CARES Act nor the First Step Act requires an inmate to express remorse for his original criminal conduct when asking the warden and the Court to consider his extraordinary and compelling medical needs and the grave health risks he faces as a result of the pandemic. Mr. Camut accepted responsibility for his conduct and has served over 75% of his sentence. A reduction in his sentence to permit him to serve the last few months of his sentence on home confinement while he seeks cancer treatment in the community would serve the purposes of 18 U.S.C. § 3553(a).

## CONCLUSION

Mr. Camut has demonstrated extraordinary and compelling reasons for compassionate release and asks this Court to Modify his sentence. In light of footnote 2, at page 3 of the Government's Response to Defendant's Motion for Compassionate Release, rather than his request to serve until September 16, 2020 on Electronic Home Monitoring, Defendant now requests that the Court modify his sentence such that he would serve until his release date of March 9, 2021 on Electronic Home Monitoring.

                                                      Respectfully submitted,

                                                      /s/
                                          Richard A. Finci, Esquire
                                          Houlon, Berman, Finci & Levenstein, LLC
                                          7850 Walker Drive, Suite 160
                                          Greenbelt, Maryland 20770
                                          finci@houlonberman.com
                                          Telephone: (301) 459-8200
                                          Facsimile: (301) 459-5721
                                          Client Protection Fund #8501010190

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of July, 2020, a copy of the foregoing Reply in Support of Emergency Motion for Compassionate Release Pursuant to U.S.C. § 3582(c)(1)(A)(i) was served via filing in the electronic filing system to Erin Pulice, Esquire, Office of the United States Attorney, 6406 Ivy Ln, Greenbelt, MD 20770.

                                                      /s/
                                          Richard A. Finci, Esquire