## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| v. | * | Criminal No. **PJM 15-334** |
| | * | |
| **CHRISTOPHER C. CAMUT,** | * | |
| | * | |
| Defendant. | * | |

### MEMORANDUM OPINION

On August 6, 2015, Christopher C. Camut pled guilty to conspiring to defraud three different companies where he served as the Chief Financial Officer, in violation of 18 U.S.C. § 1349 and 18 U.S.C. § 1343. He created false emails, engagement letters, agreements, and invoices to make it appear as if financial institutions had provided services to the companies when, in fact, no services had been rendered. *See* ECF No. 22-1. Using his executive position, he caused the companies[1] to issue checks payable to the financial institutions that Camut would take in hand and then deposit into his personal bank accounts. Over a period of six years, his fraudulent acts caused a total loss of at least $1,618,951. *Id.*

On May 19, 2016, the Court sentenced him to 80 months imprisonment and 3 years supervised release. ECF No. 33. He reported to prison on July 5, 2016 and is presently in the custody of the United States Bureau of Prisons, assigned to Federal Correctional Institution Florence ("FCI Florence") in Colorado. As things stand, Camut is scheduled to be transferred to a Residential Reentry Center on September 16, 2020 and to serve out his sentence on March 9, 2021. *See* ECF No. 54, p.3 n.2.

---

[1] One company was a non-profit that provided women in developing countries with HIV protection, another was a manufacturer of medical products, and a third was involved in developing medical countermeasures against biological and chemical threats.

On June 11, 2020, Camut filed an Emergency Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 42. He submits that "extraordinary and compelling reasons" exist for his release by reason of his particular vulnerability to COVID-19. Specifically, he explains, he was treated for thyroid cancer prior to his incarceration and his private doctor recently informed him that the cancer may have metastasized. *See* ECF No. 44-3. To confirm this hypothesis, Camut submitted that he needed to see an endocrinologist "as soon as possible," but that the prison has denied his request because of a policy that limits outside transport in order to reduce the spread of COVID-19 within the facility. *See id.*; ECF No. 44, pp. 11-12. Camut, who is 57 years old, also submits that he suffers from hypertension and renal failure.

On July 9, 2020, the Government responded in opposition, ECF No. 54, and on July 10, 2020, Camut replied, ECF No. 49. Following the conclusion of briefing on the motion, the Government informed the Court that the Bureau of Prisons ("BOP") had brought Camut to see an outside endocrinologist and, as he sought, a PET scan was administered. *See* ECF No. 59. The test indicated that Camut's thyroid cancer has not metastasized. *See* ECF No. 59-1.[2]

For the reasons that follow, Camut's Motion for Compassionate Release is **DENIED**.

## I.

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010). This general rule is subject to certain exceptions, including the compassionate release provision upon which Camut relies. *See* 18 U.S.C. § 3582(c)(1)(A).

---

[2] Camut does not dispute this characterization of his PET scan and endocrinology appointment. In subsequent correspondence with the Court, however, he reports an additional appointment with an unnamed doctor who, he says, conducted a biopsy of potentially cancerous tissue on his neck. *See* ECF No. 61. The BOP has no record of this and, in any event, it does not change the Court's ruling.

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the 2018 First Step Act, courts may consider compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). If a defendant has exhausted his administrative remedies, the court "may reduce the term of imprisonment... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that... (i) extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant generally bears the burden of establishing that a sentence reduction is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Riley*, ELH-16-0402, 2020 WL 3034843, at *5 (D. Md. June 4, 2020).

## II.

The parties agree that Camut has "fully exhausted all administrative rights." 18 U.S.C. § 3582(c)(1)(A). He filed the requisite petition with FCI Florence's warden on April 10, 2020. ECF No. 44-1. More than 30 days had lapsed without a response when Camut filed the instant motion with the Court.[3] Moreover, on June 18, 2020, the warden officially denied his request, informing Camut that "[a]lthough you have a history of cancer, you are able to independently attend to your activities of daily living and the BOP can provide conventional treatment while you are incarcerated." ECF No. 54-1. As such, the Court concurs that Camut has exhausted his administrative remedies.

---

[3] The Government informs the Court that the warden received it on June 9, 2020. The parties agree that more than 30 days had lapsed. *See* ECF No. 54, p. 5.

III.

The Court next considers whether Camut meets the requirements for compassionate release. The Government asserts that the Court is obliged to deny Camut's motion because, it says, his asserted ailments do not comport with the definition of "extraordinary and compelling reasons" within the U.S. Sentencing Guidelines § 1B1.13, which includes, for example "a terminal illness." U.S.S.G. § 1B1.13 App. Note 1(A)(i). It explains that while, "[i]t is without question that [Camut] should continue to receive medical care along with any necessary diagnostic tests," at this point Camut is only experiencing a "potential reoccurrence" of thyroid cancer. ECF No. 54, p. 11. Indeed, following the briefing of this motion, the Government informed the Court that the desired PET scan was undertaken, and an outside endocrinologist concluded that the test "did not show anything too concerning." ECF No. 59-1. The medical note does, however, indicate a possibility of "progressive thyroid failure." *Id.*

The Court rejects the Government's assertion that it is bound by U.S.S.G. § 1B1.13. In accord with the judges of this district, its own holding in *United States v. Barringer*, 2020 WL 2557035, at *1 (D. Md. May 19, 2020), and many courts nationwide, the Court finds that in light of the passage of the First Step Act, U.S.S.G. § 1B1.13 and BOP criteria are "helpful guidance," but that a court has independent discretion to determine whether there are "extraordinary and compelling reasons" for release.

It is fair to say, however, that the Camut's current medical condition is not as dire as he thought it was when he filed his Motion on June 11, 2020 and, at this point, there is no indication that BOP cannot or will not provide Camut with appropriate medical care while in custody. To be sure, Camut has hypertension and a documented history of thyroid cancer, and his physicians and the parties agree that he requires continued medical treatment. The Court recognizes that some

4

judges in this district have held that a diagnosis of hypertension or thyroid cancer – although, to be clear, there is no evidence at this juncture that Camut has experienced a recurrence – may increase an individual's susceptibility to the effects of the virus. *See United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at \*2 (D. Md.  Apr. 28, 2020) (granting compassionate release for defendant with a "thyroid mass... that... a doctor concluded had a 25 to 40 percent chance of being malignant"); *United States v. Gutman*, RDB-19-0069, 2020 WL 2467435, at \*2 (D. Md. May 13, 2020) (granting compassionate release and stating defendant's "hypertension also potentially puts him at risk"); *see also United States v. McRae*, PJM 10-0127, 2020 WL 3791983, at \*4 (D. Md. July 7, 2020) (finding that "hypertension and Stage 3 Chronic Kidney Disease, both... make [defendant] more susceptible to severe illness from COVID-19"). The Court considers Camut's medical status in the context of the challenges faced by prisons nationwide to maintain social distancing and stop the spread of COVID-19.[4]

In addition, the Court is required, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), to take into account the factors outlined in 18 U.S.C. § 3553(a). Those factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" and (3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).

The parties agree that Camut's conduct was serious. *See* 18 U.S.C. § 3553(a)(1). It was – over a period of six years he used his position of trusted authority within three companies, including a non-profit dedicated to helping women in developing countries avoid contracting HIV, to steal over $1.6 million dollars. Camut orchestrated the scheme and actively facilitated it by, for

---

[4] The Government reports that as of July 28, 2020, no FCI Florence prisoners have tested positive (although three staff members have). *See* ECF No. 59.

example, repeatedly forging the name and signature of a bank employee to make it appear that the bank had performed work it had not. *See* ECF No. 22-1. He now asks for compassion where he himself showed little.

Camut asserts that there is no further need for the term of imprisonment imposed because he has no prior criminal record and "would have difficulty obtaining" a Chief Financial Officer position or "similar employment" upon release, the implication being that he would be unlikely and unable to defraud again. ECF No. 44-14; *see* 18 U.S.C. § 3553(a)(2). Buttressing this argument, says Camut, is that he has incurred no disciplinary infractions while incarcerated.

The Court is unpersuaded. Camut actively swindled his employers over a period of many years. And, as the Government notes, within his motion to the warden and to this Court, he gives the Court no indication of his rehabilitation, failing to mention his victims, lessons learned, or remorse. In short, there is little indication that the approximately 49 months that Camut has served in prison have been sufficient to deter him from future criminal activity or to adequately protect the community.[5]

Camut's sentence was imposed pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea, meaning that his fixed 80-month term of imprisonment was negotiated between his counsel and the Government, which bound the Court once it accepted the agreement. Fed. R. Crim. P. 11(c)(1)(C). The Court is not inclined to upset the balance of that agreement at this time. Taking stock of the 18 U.S.C. § 3553(a) factors, the Court also finds that Camut has not yet served a term "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

---

[5] In any event, as previously noted, Camut is slated to enter a Residential Reentry Center in a matter of weeks. *See* ECF No. 54, p.3 n.2. During the course of his stay in this less restrictive setting, he will have ample time to reflect more deeply on the effect of his crime upon his victims and not just the effects on himself.

6

All this considered, Camut's Motion for Compassionate Release, ECF No. 42, is **DENIED**.

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

**August 6, 2020**

7